**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM BUCARO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 06 C 6006** |
| | ) | |
| **FOREST PRESERVE DISTRICT OF** | ) | **Judge Rebecca R. Pallmeyer** |
| **COOK COUNTY, ILLINOIS, JO ANN T.** | ) | |
| **ROBINSON, in her official and** | ) | |
| **individual capacities, and RICHARD** | ) | |
| **BONO, in his individual capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

After an incident in which Forest Preserve District officials concluded that Plaintiff, a maintenance superintendent, had made false statements on two time sheets, Plaintiff was notified he would be terminated and resigned in response. In this lawsuit, Plaintiff contends he was denied due process and deprived of overtime pay to which he is entitled. His original complaint asserted a "class of one" equal protection claim, as well, but he has withdrawn that claim. Defendants, the Forest Preserve District and two supervisory officials, now move for summary judgment. They argue that Plaintiff was exempt from Fair Labor Standards Act coverage; that he received all the process due him; and that the individual Defendants are entitled to qualified immunity. For the reasons set forth below, the motion is granted in part and denied in part.

## FACTS[1]

The Forest Preserve District of Cook County, Illinois (the "District"), was created by Illinois law and charged with acquiring and preserving natural areas in Cook County and maintaining them for public use. (Def.'s 56.1 ¶ 1; 70 ILCS 810/0.01 *et seq.*) Plaintiff William Bucaro was employed

---

[1]     Defendants' Statement of Material Facts is cited as "Defs.'s 56.1 ¶ ___"; Plaintiff's Response to Defendants' Statement of Material Facts is cited as "Pltf.'s 56.1 Response ¶ ___"; and Plaintiff's Statement of Additional Facts is cited as "Pltf.'s 56.1 Add'l. ¶ ___." The court includes citations to the record material on which the parties have relied, as well.

by the District from 1980 until July 21, 2006, most recently in the position of Division Superintendent of Maintenance, responsible for maintenance of District properties and facilities. (Defs.' 56.1 ¶ 4.) Until the incidents in June 2006, described below, Plaintiff had never been disciplined in his 26 years with the District. (Pltf.'s 56.1 Add'l. ¶ 1.) Defendant Richard Bono was Assistant to the District's Maintenance Superintendent, and Defendant Jo Ann T. Robinson, the District's Human Relations/Hearing Officer, was responsible for discipline of District employees. (Defs.' 56.1 ¶¶ 2, 3.)

**Plaintiff's Employment History**

Plaintiff began his employment with the District as a Laborer who cleaned District property, picked up garbage, and cut grass. (Id. ¶ 7.) Plaintiff was represented by the Teamsters Local 726 in this position, and continued to be member of the bargaining unit as he earned promotions to the positions of Serviceman I and Serviceman II. (Id. ¶¶ 7, 8.) When he was promoted to the position of Division Superintendent in 1994, however, Plaintiff became a "boss" and was no longer represented by the union. (Id. ¶ 9, citing Deposition of William Bucaro, Exhibit 8 to Defendants' Motion for Summary Judgment, [hereinafter "Bucaro Dep."] at 22.) In fact, as Division Superintendent, Plaintiff supervised all District Laborers and Servicemen, approved their requests for time off, and assigned them work. He also had the power to give disciplinary warnings and to recommend staff for promotions. (Id. ¶ 10, citing Bucaro Dep. at 29-30, 40, 51, 56-57, 59-60, 63, 146.) Plaintiff testified that he made daily inspections to determine the need to improve maintenance operations in his Division within the District and to ensure that facilities met the needs of the public. He also "mapp[ed] out work projects, formulated plans and schedules for future operations," "over[saw] personnel," and supervised cleaning operations, disposal of refuse, mowing, and trimming. (Id. citing Bucaro Dep. at 52-53.)

In January 2006, two of the Divisions of the District were merged into one, and Plaintiff was assigned to supervise the laborers and hourly employees within this new Division, one of eight in

2

the District.  He also supervised an Assistant Superintendent, Jimmie Bareto, and a clerk, and he shared an office with Bareto and with the Regional Superintendent, Jose Varella.  (*Id.* ¶ 11, citing Bucaro Dep. at 34, 37, 39-40, 51, 146.)  In this position, Plaintiff earned a bi-weekly salary of $2,373.36, and was responsible for scheduling his maintenance subordinates for work, taking into account their preferences, vacation schedules, emergencies, illness, and fairness.  (*Id.* ¶ 12, citing Bucaro Dep. at 45-46, 58, 60.)

**Process for Recording Work Hours**

All employees within Plaintiff's Division were required personally to record their start time, quit time, and number of hours worked on a daily basis on one of two daily time sheets–one for Laborers and Servicemen, and a second for Plaintiff and his Assistant, Bareto.  (*Id.* ¶ 14, citing Bucaro Dep. at 64-66, 68, 69.)  At the end of each work day, Plaintiff or Bareto would remove the Laborers' daily time sheet from its clipboard, approve it, certify it as accurate by signing it, and send it to the District's headquarters for payroll processing.  Jose Varella, the Regional Superintendent, reviewed and approved the separate time sheet on which Plaintiff and Bareto recorded their time. (*Id.* ¶¶ 15, 16, citing Bucaro Dep. at 50, 66, 67-68, 70-72.)

The District's payroll work week runs from Friday through Thursday, and the regular work day for maintenance staff during summer months ran from 6:00 a.m. to 2:30 p.m., including eight hours of paid time and a half hour unpaid for lunch.    (*Id.* ¶ 17, citing Bucaro Dep. at 55-56.) Laborers and Servicemen were compensated for work in excess of 40 hours per week by way of compensatory time off. (*Id.* ¶ 18, citing Bucaro Dep. at 80, 107-08.)  Although Plaintiff did not deny Defendants' assertion that managers, including Bucaro, did not receive "Comp. Credit" for working more than 40 hours in a work week, Plaintiff nevertheless contends that "AP" time was used to compensate managers for having worked more than 40 hours in a work week. (*Id.* ¶ 19, citing Bucaro Dep. at 77, 80; Pltf.'s 56.1 Add'l ¶ 3.)  It is undisputed that Leroy Taylor, the District-wide Maintenance Supervisor, was responsible to approve overtime work for maintenance employees

3

and to decide whether managerial staff, including Plaintiff, could receive "AP" pay for days on which they were absent from work.  (*Id.* ¶ 20, citing Bucaro Dep. at 42, 50, 59, 93.)

**June 2006 Time Sheets**

For the two-week period from Friday, June 16 through Thursday, June 29, Plaintiff prepared the work schedule for himself and his maintenance staff; that schedule was subject to change.  He scheduled himself to work on June 16 and 17, to be away on June 18 and 19, and then to return to work for June 20 and June 21, 2006.  (*Id.* ¶ 21, citing Bucaro Dep. at 54; Pltf.'s 56.1 Add'l. ¶ 9, citing Bucaro Dep. at 46.)   Plaintiff owns a time-share agreement that entitles him to use accommodations at the Fox River Resort for one week each year; in 2006, Plaintiff's time-share week was June 18-24.  (*Id.* ¶ 22, citing Bucaro Dep. at 75-76, 117.)  Plaintiff showed up for work on Friday and Saturday, June 16 and 17, but decided to take his family to Fox River Resort for the following week.  (*Id.* ¶ 23, citing Bucaro Dep. at 74-76, 117.)   Although Plaintiff had accrued vacation time and personal days available, he did not request to use such time, intending instead to use what he understood to be accrued but unused "AP" time.  (*Id.* ¶ 24, citing Bucaro Dep. 91-92, 107, 109,  Pl.s 56.1 Response ¶ 24, citing Bucaro Dep. at 77-80.)

To that end, on Saturday, June 17, 2006, Plaintiff completed two daily time sheets for June 20 and 21.  Plaintiff does not dispute having completed those time sheets on June 17; he denies, however, "that the time sheets he completed showed him as working" and contends instead that had those time sheets "been submitted and approved," he would have received pay for those days as AP time.  (Pltf.'s 56.1 Response ¶ 25, citing Bucaro Dep. at 77-80.)  The court notes that the copies of the time sheets that appear in the record contain a column in which the "payroll action code" can be recorded, and a list of possible codes appears at the bottom of the page.  "AP Absent with Pay" is one of the codes listed.  Yet the only code that appears in that column on either of the two time sheets is a number 8, which appears to be a reference to the number of hours worked. (Exhibits 4 and 5 to Bucaro Dep., [Docket No. 64].)  On each of the two time sheets, Plaintiff wrote

4

a "start time" of 6:00 a.m. and a "stop time" of 2:30 p.m.. He signed his name in two places on each sheet, once in the place designated for the employee's signature "at the start of the work period" and a second time in the place designated for the employee's signature "at end of day." (Defs.' 56.1 ¶ 26, citing Bucaro Dep. at 74, 97-98, and Exhibits 4 and 5.) Although he points out that neither he, nor anyone on his behalf, ever submitted the time sheets for approval, Plaintiff has admitted that he filled out and signed these time sheets for June 20 and 21, and that on their face, they indicate that he was present at work for a full eight-hour work day on each of those dates. (Pltf.'s 56.1 Response ¶ 26.) He admits, further, that had he been given permission to take June 20 and 21 off using "AP" time, the payroll code "AP" would have appeared in the "Payroll Action Code," column, there would be no indication that he had worked from 6:00 a.m. to 2:30 p.m., and Plaintiff would not have signed the time sheets himself. (Defs.' 56.1 ¶ 34.)

At the time he completed the time sheets, showing him as working when he knew he would not be working those days, Plaintiff hoped to speak to Leroy Taylor about his understanding that the District "owed" him two days off for two occasions three weeks earlier. Specifically, on May 31 and June 1, 2006, Plaintiff had worked on his scheduled days off, but had taken May 29, Memorial Day, as a paid holiday. (Defs.' 56.1 ¶¶ 30-32, citing Bucaro Dep. at 86, 103, 104-05, 108-09, 148-49.) Although Plaintiff was not certain what direction Taylor would have given him, he recognized that Taylor would not be inclined to let him use "AP" time for June 20 and 21; Plaintiff recalled that two or three weeks earlier, Taylor had told him that the "big bosses downtown" were unhappy about employees being permitted to use "AP" time to be paid when absent from work. (Defs.' 56.1 ¶ 33, citing Bucaro Dep. at 77-78, 97; Pltf.'s 56.1 Response ¶ 33.) In fact, as of June 2006, neither Leroy Taylor nor any other manager had authorized Plaintiff to sign in and out on a daily time sheet and leave the time sheet in his office as though he had worked a full day. Plaintiff himself had never done it before, and he has no evidence that any other District employee has done so. (Defs.' 56.1 ¶¶ 35, 36 citing Bucaro Dep. at 78-79, 93-94, 99-100, 102, 147.)

5

When he left work on Saturday, June 17, 2006, Plaintiff left the time sheets in the Division office on a clipboard.  (Defs.' 56.1 ¶ 27, citing Bucaro Dep. at 84, 95, 98.)  Plaintiff left for the Fox River Resort the next day without contacting Leroy Taylor or his immediate supervisor, Regional Superintendent Jose Varella.  He did let Barreto know before June 18 that he would not be at work on June 20 and 21 and would leave time sheets at the office for those days.  (Defs.' 56.1 ¶¶ 28, 29, citing Bucaro Dep. at 87-88; Pltf's 56.1 Response ¶ 29.)

**District's Response to the June 20 and 21 Time Sheets**

Richard Bono, one of two Assistants to the Maintenance Superintendent Leroy Taylor, called Plaintiff's office early in the morning of June 20, 2006 to speak to Plaintiff about removal of graffiti at one of the District facilities in Plaintiff's Division.  (Defs.' 56.1 ¶ 38, citing the Deposition of Richard Bono, Exhibit 9 to Defendants' Motion for Summary Judgment [hereinafter "Bono Dep."] at 57-61.)  Plaintiff's assistant, Jimmie Barreto, answered the phone on June 20 and, after some initial hesitation, told Bono that Plaintiff had signed himself in for eight hours but was not actually at work.  (Defs.' 56.1 ¶ 39, citing Bono Dep. at 60-62.)  Bono then drove to the office and saw the time sheet Plaintiff had completed for June 20; later he found the June 21, 2006 time sheet in a trash can (placed there by somebody other than Plaintiff), and retrieved it as well.  (Def.'s 56.1 ¶¶ 40, 41, citing Bono Dep. at 62-67; Pl.'s 56.1 Add'l. ¶ 7.)  Bono took both time sheets back to District headquarters, where he showed them to Maintenance Superintendent Taylor and Human Relations Officer Jo Ann Robinson.  (Def.'s 56.1 ¶ 42, citing Bono Dep. at 70.)  At Robinson's direction, Bono attempted to reach Plaintiff.  Plaintiff did not answer his cell phone, but his brother answered Plaintiff's home phone and told Bono that Plaintiff was out of town.  (*Id.* ¶ 43, citing Bono Dep. at 72-73.)

Plaintiff spoke to his assistant, Jimmie Baretto, on the morning of June 20.  Baretto told Plaintiff that Bono had come to the office and retrieved Plaintiff's time sheets.  Plaintiff then called Leroy Taylor, who told him that Bono had given the time sheets to Robinson.  (*Id.* ¶ 44, citing

Bucaro Dep. at 124-126, 131.)  In a telephone conversation later that day, Robinson told Plaintiff that he was being suspended and that the District would convene a predisciplinary hearing to consider charges that Plaintiff had falsified his time sheets.  (*Id.* ¶ 45, citing Bucaro Dep. at 138-139, 178.)  When he reached his home on June 22, Plaintiff found a letter dated June 20, 2006, confirming his suspension from work and setting out the disciplinary charges as "theft or unauthorized possession of . . . property and falsification of employment records or other District records through misstatement or omission . . . . " (*Id.* ¶ 46, citing Bucaro Dep. at 180-182; Robinson June 20 letter, Exhibit 7 to Bucaro Dep.)  A second letter, hand delivered to Plaintiff on June 28, 2006, set the hearing for July 10 at 10:30 a.m., explained that Plaintiff was entitled to be accompanied by a representative of his choice, and warned, "If you fail to attend this hearing without a showing of just cause, you may forfeit your right to appeal any disciplinary action imposed against you."  (*Id.* ¶ 47, citing Bucaro Dep. at 183, 204-05; Robinson June 28 letter, Exhibit 8 to Bucaro Dep.)

**Pre-disciplinary Hearing**

Plaintiff attended the pre-disciplinary hearing on July 10 at District headquarters.  Also present were Jo Ann Robinson, Rick Bono, Leroy Taylor, Jimmie Barreto, Jose Varella, and a court reporter who accurately transcribed the proceeding.  (*Id.* ¶¶ 50 48, citing Bucaro Dep. at 135, 140-141, 185, 186.)  Plaintiff heard and saw the witnesses and, although he contends Jo Ann Robinson cut him off at one point, he does not otherwise challenge Defendants' assertion that he had an opportunity to present evidence and answer questions.  (*Id.* ¶ 49, citing Bucaro Dep. at 187 ["Q. But you had an opportunity to say whatever you felt you wanted to say at the time of the pre-disciplinary hearing, correct?  A.  Yeah, I would say I did."])  It is undisputed that the June 20 and 21 time sheets were never submitted to headquarters and that Plaintiff was not paid for those days, but at the disciplinary hearing and in the record in this court, he has admitted that he did complete those time sheets by signing his name and entering start times, stop times, and hourly work totals

as if he had worked on those two days.  (*Id.* ¶ 51, citing Bucaro Dep. at 141; Pltf.'s 56.1 Add'l. ¶¶ 6, 8.)

In a telephone conversation on July 19, 2006, Jo Ann Robinson advised Plaintiff that the District had decided to terminate his employment.  Later that day, Plaintiff received a written Notice of Termination stating, "Please be advised that your employment with the Forest Preserve District of Cook County has been terminated effective Wednesday, July 19, 2006 and immediately upon your receipt of this correspondence."  (Defs.' 56.1 ¶ 52, citing Bucaro Dep. at 197-199, 201-202; Robinson July 19 letter, Exhibit 9 to Bucaro Dep.)  The Notice invited Plaintiff to call Ms. Robinson if he had questions "or wish[ed] to discuss resignation options."  Plaintiff did not speak to Ms. Robinson in response to this letter.  On July 21, 2006, however, after another District supervisor, Frank Mole, told him he could "save his pension and help his prospects for future employment" if he were to resign, Plaintiff did submit a written resignation.  (Def.'s 56.1 ¶ 53, citing Bucaro Dep. at 214 -218; Pltf.'s 56.1 Resp. ¶ 53; Pltf.'s 56.1 Add'l ¶ 11, citing Bucaro Dep. at 220-222.)  Plaintiff explains that he completed and turned in the resignation form because he believed resigning in lieu of discharge would preserve his pension rights.  (Defs.' 56.1 ¶ 54, citing Plaintiff's Response to Request for Admissions, Exhibit 6 to Defs.' 56.1, ¶ 6.)

**Appeal Rights**

The Cook County Human Resource Ordinance provides that before a District employee is disciplined, he or she is entitled to a statement of the disciplinary charges, an explanation of the evidence that supports the charges, an opportunity to respond before discipline is imposed, and an appeal procedure that includes a post-disciplinary hearing before a five-member Appeals Board.  (Defs.' 56.1 ¶ 55, citing Human Resource Ordinance, Exhibit 5 to Defs.' 56.1, §§ 44-47, 44-49.)  Cook County Personnel Rules explain that within five days of the effective date of disciplinary action, an employee may "grieve" the decision to the Employee Appeals Board "by making a written request for a hearing."  (*Id.* ¶ 57, citing County of Cook Personnel Rules, Exhibit 4 to Defs.' 56.1,

9.06(b)(1).)  Further, Illinois law provides for review of Appeals Board decisions in circuit court. (Defs.' 56.1 ¶ 58, citing 750 ILCS 5/3-103.)

Plaintiff acknowledges these provisions, but contends Defendants gave him no notice of his appeal rights.  In a declaration, Plaintiff asserts that he "was not familiar with the appeal process because [he] had never been involved in a disciplinary proceeding." (Declaration of William Bucaro [hereinafter "Bucaro Decl."], Exhibit A to Pltf.'s 56.1 Response, ¶ 9.)  He testified that he "wasn't informed" and "got no paperwork" concerning his appeal rights.  (Bucaro Dep. at 203.)  At his deposition, Bucaro testified that he asked Ms. Robinson for a "second hearing" (presumably at the time of the prediscipary hearing) and she told him he was not entitled to one.  (Bucaro Dep. at 223-225.)  Plaintiff did not in fact make a written request for appeal.  (Defs.' 56.1 ¶ 59, citing Bucaro Dep. at 223-225.)  He now asserts that had he known of his right to such a proceeding, and if Ms. Robinson had not told him no appeal was available, he would have filed an appeal.  (Bucaro Decl. ¶ 11.)

**Evidence on Lost Pay and Equal Protection Claims**

Plaintiff believes Steve Bono had some "personal animosity" against him and that Jo Ann Robinson acted "recklessly" or "callously" on the basis of information she had been "fed"; but he does not contend that Defendants took action against him based on any class-based characteristic. (Defs.' 56.1 ¶ 60, citing Bucaro Dep. at 149-165, 169.)  Although he suspected that "nepotism" may have been a motivating factor in his discipline, he acknowledges he has no admissible evidence to support that suspicion.  (*Id.* ¶ 61, citing Plaintiff's Answers to Interrogatories, Exhibit 7 to Defs.' 56.1, ¶¶ 1, 5. )

After Plaintiff's resignation, the District paid him for 40 days of paid vacation time, the maximum number of days an employee can accrue.  Plaintiff acknowledges, further, that he is not entitled to be paid for any accrued but unused sick or personal time.  (Defs.' 56.1 ¶¶ 63-65, citing Bucaro Dep. at 109, 111-113, 148-149; Human Resource Ordinance, Exhibit 5 to Defs.' 56.1, § 44-

94(b).)

## **DISCUSSION**

Three issues are before the court on this motion for summary judgment: first, whether Plaintiff is covered by the Fair Labor Standards Act; second, whether he has been denied due process and, if so, what remedy is appropriate; and finally, whether Defendants Bono and Robinson are entitled to qualified immunity.  In addressing these issues, the court recognizes that summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In determining whether there is a genuine issue of fact, the court views the evidence and draws all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar, Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).  The party who bears the burden of proof on an issue may not rest solely on the allegations made in the pleadings or on speculation, but must affirmatively demonstrate the existence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

**Fair Labor Standards Act**

Plaintiff's complaint alleged that he had been denied overtime pay.  Other than a single sentence in his declaration, he has offered no evidence in response to the motion for summary judgment on this claim, but the District, as his employer, has the burden of proving that he is exempt from FLSA coverage. *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 370 (7th Cir. 2005), citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97 (1974); *Perez v. RadioShack Corp.*, 552 F. Supp.2d 731, 835-36 (N.D. Ill. 2005).  The court concludes the District has not met that burden.

The Fair Labor Standards Act, 29 U.S.C. § 201 et seq., requires employers to pay overtime work at the rate of one and a half times the regular wage for time in excess of 40 hours per week.

There is an exception, however, for persons "employed in a *bona fide* executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  Under applicable regulations, Plaintiff is employed in a *bona fide* executive capacity if (1) he was compensated on a salary basis at not less than $455 per week; (2) his primary duty is management of a customarily-recognized department or subdivision; (3) he customarily and regularly directs the work of two or more other employees and (4) his recommendations regarding hiring, firing advancement, or promotion for his employees are given particular weight. 29 C.F.R. § 541.100(a).   The first three prongs of this test are undisputed. Plaintiff's salary was more than twice the minimum set forth in the regulations; he managed maintenance in one of the eight Divisions of the Forest Preserve District; and he directed the work not only of Jimmie Bucaro and a clerk, but of all the Laborers and Servicemen in his Division.

The claim turns, then, on the fourth prong of the test: whether Plaintiff's recommendations concerning his subordinates are given "particular weight."   Though he acknowledged at his deposition that a Division superintendent would "have a little bit of say in" promotion decisions (Bucaro Dep. at 28-29), Plaintiff asserts that he himself  "did not have input into the promotion of his subordinates." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, at 9; Bucaro Decl. ¶ 11.)  Defendants note that Plaintiff became Division Superintendent when his predecessor in that position, Gene Gallagher, recommended him for the job.  (Bucaro Dep. at 30.)  It seems likely that Plaintiff had similar influence when he himself served as Division Superintendent, and Plaintiff's subjective belief that his recommendations did not carry particular weight would be insufficient to rebut evidence to the contrary.   *Cf. Monroe Firefighters Ass'n v. City of Monroe*, No. 06-CV-1092, ___ F. Supp.2d ___, 2009 WL 455135, *10 (W.D. La. Feb. 23, 2009).  In this case, however, neither party has offered evidence concerning Plaintiff's role, if any, in promotions that occurred during his twelve-year tenure as Division Superintendent.  As Defendants bear the burden of proof on this issue, the record's silence requires the court to deny their motion for summary judgment on the FLSA claim.

As the test for coverage under the analogous Illinois law is limited to the first three prongs of the FLSA test, however, the court dismisses Plaintiff's state law overtime pay claim.

**Due Process**

Where state law protects a public employee from being discharged without cause, he has a property right in his employment and may not be deprived of that right without due process. *Cleveland Bd. of Educ. v. Loudermill,* 460 U.S. 532, 538-39 (1985); *Miyler v. Village of East Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008); *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Both sides in this case have devoted substantial attention to the question of whether Plaintiff was in fact guilty of falsification of his time sheets. Plaintiff in particular splits hairs, suggesting that the fact that his phony time sheets were never submitted to District headquarters for processing somehow deflects the evidence of his wrongdoing.

For purposes of his due process claim, however, the question before the court is not whether the District decision-makers made the right call, but whether Plaintiff received all the process he is due. In situations like this one, where an employee is entitled to a full hearing after his termination, a pre-deprivation hearing satisfies due process if the employee receives notice of the allegations, an explanation of the evidence against him, and a chance to tell his version of the story. *Powers v. Richards*, 549 F.3d 505, 511 (7th Cir. 2008), citing *Loudermill*, 470 U.S. at 546, and *Michalowicz*, 528 F.3d at 536-37. That test is readily met here: Plaintiff received written notice of the charges against him. He heard the testimony of witnesses at the pre-deprivation hearing, and although he was briefly interrupted at one point–something that happens in even the most formal of court proceedings–there can be no serious claim that he did not have a chance to tell his story.

As noted, however, pre-deprivation proceedings are ordinarily deemed adequate only if the employee is entitled to a full hearing after he has been fired. The District contends that Plaintiff waived his right to a further hearing before the Appeals Board by resigning from his position soon

after receiving notice of the decision to discharge him.  Plaintiff contends he was not aware of the

possibility of appeal and was advised he had no such right, and the court concludes there is a

dispute of fact on this issue.  The letter notifying Plaintiff of the date for his pre-disciplinary hearing

referred to a potential future appeal, but the subsequent letter formally notifying Plaintiff of the

discharge decision was silent on the issue.  Instead, it invited Plaintiff to contact Jo Ann Robinson

if he had questions.  Plaintiff contends that Ms. Robinson explicitly denied his request for a "second

hearing."  Defendants deny such an exchange occurred; in any event, they argue, Plaintiff has

established only that Ms. Robinson denied him a second *pre*-deprivation hearing.  But whether

Plaintiff understood that further proceedings would pre-date or post-date the termination decision,

his testimony that his request for an additional review was denied creates a dispute of material fact

on his due process claim.

In denying summary judgment on this claim, the court pauses to note that a decision in

Plaintiff's favor on the claim will not automatically result in an order of reinstatement.[2]  If his appeal

to the Appeals Board would have been unsuccessful, he is not entitled to return to his position, nor

is he entitled to recover damages for lost pay.  In *Dargis v. Sheahan*, 526 F.3d 981 (7th Cir. 2008),

where this court found that Cook County violated due process by placing plaintiff correctional officer

on "zero pay status" without convening a hearing, the Court of Appeals affirmed the conclusion that

the appropriate remedy was an order directing the Sheriff to conduct the due process hearing to

which plaintiff was entitled.  526 F.3d at 989, citing *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

Plaintiff appears to believe that termination is too harsh a sanction for the alleged misconduct.  In

support of this belief, he o offers copies of several arbitration awards in favor of District employees

whose infractions were, in Plaintiff's view, more serious.  (Arbitral Awards, Exhibit G to Plaintiff's

---

[2]       Plaintiff has conceded that he is entitled to seek recovery of accured but unused sick
and personal leave time only if he is reinstated.  (Plaintiff's Memorandum of Law in Opposition to
Defendants' Motion for Summary Judgment, at 9.)  Accordingly, the court declines to address the
parties' arguments on that issue.

56.1 Add'l.)  The court notes that the claimants in those proceedings appear to be bargaining-unit employees, who may be subject to different standards than a Maintenance Superintendent.  In any event, as Defendants appear confident that the evidence supports the termination decision, proceeding with an Appeals Board hearing may be wiser than further litigation in this court.

**Qualified Immunity**

Defendants Jo Ann Robinson and Steven Bono have asked the court to find they are entitled to qualified immunity against Plaintiff's claims. Qualified immunity shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Akande v. Grounds*, 555 F.3d 586, 589 (7th Cir. 2009).

Plaintiff correctly observes that a public employee's right to due process before termination was clearly established well prior to 2006, when the alleged violation of that right occurred.  And, as the court has concluded, there are disputes of fact precluding summary judgment on the merits of Plaintiff's due process claim.  The court has also concluded, however, that the appropriate remedy, should Plaintiff prevail on that claim, is equitable relief, not an award of money damages; damages are potentially available only in the event that the Appeals Board is convened and overturns Plaintiff's termination. In any event, Plaintiff would prevail on the merits of his due process claim only if he can prove that Ms. Robinson did explicitly refuse his request for a further hearing and did so with the understanding that he sought a hearing before the Appeals Board.  As these are disputed facts, Defendant Robinson's request for a determination of qualified immunity is denied without prejudice.  Plaintiff has offered no evidence, however, that Defendant Bono was somehow responsible for denying him a hearing.  Bono's request for dismissal of the claims against him individually is therefore granted.

## CONCLUSION

Defendants' motion for summary judgment (58) is granted in part and denied in part.

Defendants  have not met their burden of proving that Plaintiff is exempt from coverage under the Fair Labor Standards Act.  Because there are disputes of fact concerning Plaintiff's claim that he was denied an opportunity to appeal his discharge to the Employee Appeals Board, Defendant's request for summary judgment is denied as to his due process claim.  Plaintiff's cross-motion for summary judgment (76) is also denied.  Claims against Defendant Bono are dismissed on the basis of qualified immunity, but Defendant Robinson's request for dismissal on that basis is denied.

All claims other than Plaintiff's FLSA and due process claims are dismissed without prejudice. The parties are encouraged to attempt to settle this dispute.  A status hearing is set for Tuesday, April 7, 2009, at 9:00 a.m.

ENTER:

Dated:  March 23, 2009

_____
REBECCA R. PALLMEYER
United States District Judge